UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MECHANICAL EQUIPMENT COMPANY, INC. | CIVIL ACTION |
| VERSUS | NO: 08-4705 |
| AFFILIATED FM INSURANCE COMPANY | SECTION: "C" (4) |

## ORDER & REASONS

Before the Court is a Motion for Summary Judgment by Defendant Affiliated FM Insurance Company ("Affiliated"). (Rec. Doc. 26). The motion is before the Court on the briefs without oral argument. After reviewing the memoranda of the parties, the record in the case, and the applicable law, the Court GRANTS the motion as set forth below.

I. **Background**

Mechanical Equipment Company, Inc. ("MECO") manufactures and sells water purification systems. At the time Hurricane Katrina struck, August 29, 2005, MECO's manufacturing facility was located at 3855 France Road along the Industrial Canal in New Orleans East. At that time, MECO carried flood and property insurance on the France Road property. The property insurance was issued by two separate carriers, Landmark American Insurance Company ("Landmark") and Affiliated. The Landmark policy provided property damage and business interruption coverage up to a policy limit of $1,250,000. The Affiliated

policy provided property damage and business interruption coverage in excess of $1,250,000 and up to $42,885,303. The separately issued flood insurance policies provided $49 million in flood property and business interruption coverage.

MECO's France Road property suffered serious damage in Hurricane Katrina. After adjustment, the flood carriers collectively paid the policy limits of $49 million. Landmark also paid its policy limits of $1,250,000. MECO then submitted a claim to Affiliated for $11,445,830.77 for the remaineder of its claimed wind related loss, including both property and business interruption loss. Affiliated denied the claim, and the instant litigation resulted. MECO has since relocated its operations to Stafford, Texas, and then Covington, Louisiana. Affiliated now moves for summary judgment, arguing that coverage is precluded under the terms of MECO's insurance policy.

**II. Law and Analysis**

*a. Standard of Review*

Summary judgment is only proper when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56. A genuine issue of fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 247-48 (1986); *see also, Taita Chem. Co. v. Westlake Styrene Corp*., 246 F.3d 377, 385 (5th Cir. 2001). When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

The party moving for summary judgment bears the initial burden of "informing the

district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, however, "the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations." *See Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); *Lujan v. Nat'l. Wildlife Fed'n.*, 497 U.S. 871, 871-73 (1990); *Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir. 1992).

### b. Interpretation of Insurance Contracts

Louisiana law provides that an insurance policy is a contract between the parties and should be construed using the general rules of contract interpretation set forth in the Louisiana Civil Code. *Bonin v. Westport Ins. Corp.*, 930 So.2d 906, 910 (La.2006); *see also Coleman v. Sch. Bd. of Richland Parish*, 418 F.3d 511, 516 (5th Cir.2005). As with any contract, the judiciary's role in interpreting an insurance policy is to ascertain the common intent of the parties. *Coleman*, 418 F.3d at 516; *Bonin*, 930 So.2d at 910; *see also* La. Civ.Code Ann. art.2045.

The words used in an insurance policy must be given their generally prevailing meaning. *Coleman*, 418 F.3d at 516; *Bonin*, 930 So.2d at 910; *see* La. Civ.Code Ann. art.2047. Where these words are "clear and explicit and lead to no absurd consequences, the [policy's] meaning and the intent of the parties must be sought within the four corners of the document and cannot

be explained or contradicted by extrinsic evidence." *In re Liljeberg Enters., Inc.*, 304 F.3d 410, 440 (5th Cir.2002)(*quoting Am. Totalisator Co. v. Fair Grounds Corp.*, 3 F.3d 810, 813 (5th Cir.1993)); *Coleman*, 418 F.3d at 518 (*quoting La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 764 (La.1994) ("[W]hen the 'language of an insurance policy is clear, courts lack the authority to change or alter its terms under the guise of interpretation.'")). Each provision of an insurance policy "must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." *Coleman*, 418 F.3d at 517; La. Civ.Code Ann. art.2050.

An insurance policy "should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion." *Bonin*, 930 So.2d at 910; *Coleman*, 418 F.3d at 516. Should ambiguities remain in an insurance policy after applying the general rules of contract interpretation, they are to be strictly construed against the insurer and in favor of coverage. *Bonin*, 930 So.2d at 911; La. Civ.Code Ann. art.2056. However, an insurance policy is ambiguous only when it is susceptible to two or more interpretations and each of the alternative interpretations is reasonable. *Id.*; *Tex. E. Transmission Corp. v. Amerada Hess Corp.*, 145 F.3d 737, 741 (5th Cir.1998)(*quoting Lloyds of London v. Transcontinental Gas Pipeline Corp.*, 101 F.3d 425, 429 (5th Cir.1996)) ("[A] contract is ambiguous, under Louisiana law, 'when it is uncertain as to the parties' intentions and susceptible to more than one reasonable meaning under the circumstances. . . ."). An ambiguity is not created simply because one of the parties to an insurance policy can create a dispute in hindsight. *Id.*

    *c. Business Interruption Exclusion*

4

Affiliated first argues that recovery is excluded by the conjunction of Section F, Group I(8) of the Property Damage Form and Exclusion 6(a) of the Business Interruption Endorsement.. Section F, Group I(8) reads:

> **F. PERILS EXCLUDED**
>
> **GROUP I.** This policy excludes loss or damage if one or more of the following exclusions apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events. . . .
> 8. **Flood,** Seepage or Influx of water from natural underground sources below the surface of the ground. . . .

(Rec. Doc. 26-5 at 26-27).

Exclusion 6(a) of the Business Interruption Endorsement Reads:

> **6. EXCLUSIONS:**
> This endorsement does not cover any of the following:
> a. Any loss during any period in which goods would not have been produced or in which business operations or services, including rental activities, would not have been maintained for any reason other than direct physical loss or damage insured by the policy.

(Rec. Doc. 26-5 at 44).

Affiliated argues that because it is "undisputed that the Affiliated Policy does not insure against damage from flood" (Rec. Doc 2602 at 11), flood damage is a "reason other than direct physical loss or damage insured by the policy" within the meaning of Exclusion 6(a). They reason that the Katrina related flooding damage, which was admittedly more severe than the wind damage, would have prevented MECO from operating for a longer period of time than any wind damage would have prevented MECO from operating. They therefore conclude that MECO cannot recover for any wind-related business interruption loss.

MECO argues that the 6(a) exclusion does not cover "situations where losses due to both

5

covered and excluded perils occurred concurrently." (Rec. Doc. 32 at 10). They first argue that the term "reason" in 6(a) is distinguishable from "peril." Had the exclusion been intended to apply to concurrent perils (such as wind and flood) within the same event, they suggest, it would have clearly said so. (Rec. Doc. 32 at 13). This argument fails. The term "reason" is broader than "peril," and MECO has presented no caselaw suggesting otherwise. By its plain language, the exclusion covers "any reason other than direct physical loss or damage insured by the policy."

MECO next asserts that the exclusion is not as restrictive as Affiliated claims it to be. They suggest that for Affiliated's interpretation to apply, the clause must clearly limit coverage to business interruptions caused *solely* by insured damages. (Rec. Doc. 32 at 15). Again, the Court declines to rewrite the plain policy language. *See Gaspard v. Offshore Crane and Equip.*, 1995 WL 110616 at *2 (E.D.La. 1995). The policy quite clearly precludes recovery when no business would have taken place had the covered damage not occurred. *See Cargill, Incorporated v. Appalachian Insurance Company of Providence*, 1983 WL 496522 at *6 (D.Minn. 1983) ("[T]he question to be answered is, 'What business interruption loss, if any, would the insured have sustained had the covered property damage not occurred?'").

MECO complains that this results in the unacceptable outcome that if nearby properties are damaged due to flooding and MECO's business is interrupted, their losses would not be covered. (Rec. Doc. 32 at 16). Although not MECO's preferred outcome, this is nonetheless an accurate portrayal of the exclusion as written.

Finally, MECO compares the language of the Business Interruption Endorsement with the language of the endorsement exclusion to support its claim that its damages should be

6

covered. The Business Interruption Endorsement covers business interruption losses:

> [d]irectly resulting from direct physical loss or damage, of the type insured by this policy to property not otherwise excluded, utilized by the insured, and at a location, but only to the extent the Insured is unable to make up production and resume or continue operations or services, partially or entirely, by utilizing damaged or undamaged property all whether or not at a location(s).

(Rec. Doc. 26-5 at 41). The covered period runs until "physically lost or damaged property could be repaired . . . at the location that existed prior to such loss or damage." (Rec. Doc. 26-5 at 41). MECO argues that this language is plainly location specific–that is, that the policy covers business interruption for the period of time it would take to repair the France Road property.

By contrast, the interruption exclusion does not reference location. It simply excludes time periods "in which goods would not have been produced . . . for any reason other than direct physical loss or damage insured by the policy." (Rec. Doc. 26-5 at 44). MECO concludes that because it opened temporary operations in Stafford, Texas, on September 14, 2005, only the two weeks between Katrina's landfall and the start of the Stafford operations are excluded. (Rec. Doc. 32 at 23). It therefore seeks recovery from September 14, 2005, until May 1, 2006, the estimated date the France Road operation could have been repaired.

Affiliated argues that the exclusions clause must be read in conjunction with the coverage itself. (Rec. Doc. 35-2 at 7). They have the stronger argument. The Endorsement itself is location-specific, covering business interruption at the France Road operation. It follows that exclusions from that Endorsement are also limited to interruption at the France Road operation. The strongest indicator of this intent, apart from the conceivable loopholes mentioned in Affiliated's briefing (Rec. Doc. 35-2 n.8), is the use of the conditional "would" in the text of the exclusions. The phrase "*would* not have been produced" indicates reference to the damaged

7

location. In other words, the Endorsement covers a time period at a specific location when, due to a covered incident, goods cannot be produced. The exclusion excepts time periods where, regardless of the covered incident, goods *would not* have been produced. If temporarily setting up shop elsewhere were an acceptable manner of evading the exclusion, the exclusion would have excluded time periods when goods "*are* not" or "*were* not" produced.

It is undisputed that MECO calculated that the flood damage at the France Road property could not have been restored sooner that December 1, 2006. (Rec. Doc. 32-2 at 8). This is later than the claimed business interruption for wind damage, which was until May 1, 2006. Thus, flood damage at that property would have prevented any business from transpiring at that location, regardless of the wind damage. The Court therefore holds that MECO cannot recover under the business interruption endorsement due to the 6(a) Exclusion.

*d. Property Damage Claim*

Because MECO's Business Interruption claim is not covered under the policy, its sole remaining covered claim is for wind-related property damage totaling $271,711.77. Affiliated argues that although Landmark paid its $1,250,000 limits on MECO's wind claims, the attachment point for Affiliated's policy has not been triggered because the Affiliated policy does not cover the business interruption claim, as discussed in Part c, above. (Rec. Doc. 26-2 at 14-15).

Section D, "Insurance Provided" in the policy indicates that it "covers excess only of such loss which is greater than an underlying amount of $1,250,000 in accordance with the excess of loss provision." (Rec. Doc. 26-5 at 18). The excess of loss provision reads: "the total amount of such loss net of salvage, subrogation or other recoveries will first be determined,

disregarding . . . [a]ny loss or damage not covered by this policy, and/or any underlying coverage or underlying policy of insurance." (Rec. Doc. 26-5 at 18). Although this language seems straightforward, MECO contends that a later provision limits the application of the excess of loss provision to certain extension of coverage sub-limits. That provision reads: "Excess of Loss Provision Coverage Exclusion: SECTION E, EXCESS OF LOSS PROVISION, only applies to the Extensions of Coverage Sub-limits, SECTION G 1-19, 21-25." (Rec. Doc. 26-5 at 9). The Extensions of Coverage Sub-limits are a list of types of expenses that have additional coverage limits (e.g., Firefighting Materials and Expenses: $100,000). (Rec. Doc. 26-5 at 6). MECO argues that this exclusion limits the application of the excess of loss provision to those listed sub-limits (G1-19 and 21-25).

Adopting MECO's argument would render Section D, Insurance Provided, inoperable because Section D depends on the Excess of Loss Provision to determine whether the $1,250,000 limit has been met. The Court declines to adopt such an interpretation. *See Bonin*, 930 So.2d at 910. MECO's property damage claim must also be dismissed.

  *e. Wrongful Adjustment and Bad faith claims*

Because the Court finds that Affiliated's contract interpretation was reasonable, and correct, the bad faith claims cannot survive. *See Phillips v. Patterson Ins. Co.*, 813 So.2d 1191 (La. Ct. App. 2002).

  Counts 2 through 4 of MECO's complaint must be dismissed.

  Accordingly,

  IT IS ORDERED that Affiliated's Motion for Summary Judgment (Rec. Doc. 26) is GRANTED.

New Orleans, Louisiana, this 30th day of March, 2010.

                                                    **HELEN G. BERRIGAN**
                                                    **UNITED STATES DISTRICT JUDGE**